**CARPENTER LAW GROUP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile:  619.756.6991
todd@carpenterlawyers.com

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER HERNANDEZ on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALGREENS COMPANY, an Illinois Corporation,<br><br>Defendant. | Case No. **'15CV0260 LAB RBB**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750, *et seq.*; and<br>3. VIOLATION OF THE FALSE ADVERTISING LAW, Business and Professions Code §17500 *et seq.*;<br><br>**DEMAND FOR JURY TRIAL** |

1
PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff JENNIFER HERNANDEZ brings this action on behalf of herself and all others similarly situated against Defendant WALGREENS COMPANY ("Walgreens") and states:

## NATURE OF ACTION

1. Defendant distributes, markets and sells "Finest Nutrition Double Strength Ginkgo Biloba 120 mg" ("Ginkgo Biloba"), a Ginkgo biloba-based supplement that purportedly provides a variety of health benefits centered around improving mild memory problems, supporting mental alertness, and supporting healthy brain function. Defendant represents that the primary active ingredient in its Ginkgo Biloba product is Ginkgo biloba extract. Through an extensive and uniform nationwide advertising campaign, Defendant represents that Ginkgo Biloba provides "brain and circulatory health" and that it "supports memory and mental focus."

2. Walgreens' advertising is false and misleading because **the Finest Nutrition supplements do not contain any Gingko Biloba and are actually adulterated with potentially harmful, undisclosed ingredients**.

3. On February 2, 2015, the Attorney General of the State of New York sent Walgreens' President and CEO a cease and desist letter demanding that Walgreens stop selling adulterated and mislabeled herbal supplements. Walgreens was notified that "5 of the 6 types of dietary supplements tested were either unrecognizable or a substance other than what they claimed to be, and therefore fairly constitute contaminated or substituted products."

4. The New York Attorney General concluded that the Finest Nutrition Gingko Biloba tested "negative" because "The only DNA identified was 'oryza,' commonly known as rice. No gingko biloba DNA was identified."

5. The New York Attorney General's findings confirmed what consumer advocacy groups have been saying for years about herbal supplements such as Finest Nutrition— major retailers like Walgreens are "not providing the public with authentic products without substitution, contamination, or fillers."

6. Even if the Finest Nutrition supplement did actually contain gingko biloba (it does not), the Product would still be falsely and deceptively labeled.

7. All available, <u>reliable</u>, scientific evidence demonstrates that the Ginkgo Biloba product has no efficacy at all, is ineffective in the improvement of cognitive health, and provides no benefits related to increasing the memory and healthy functioning of consumers' brains. Numerous <u>scientifically valid</u> studies, performed by <u>independent</u> researchers and published in <u>reputable medical journals,</u> have been conducted on Ginkgo biloba, and they have universally demonstrated that the supplement has absolutely no scientific value in the improvement of brain function, treatment of memory problems or cognitive health.

8. Defendant represents that the active ingredient in the Ginkgo Biloba product provides relief for many of these symptoms. The product labeling states that "Ginkgo Biloba Extract naturally supports: mental alertness and memory as well as peripheral circulation." *See* product label, attached as Exhibit "A" (italics added). The product label further warrants that Ginkgo Biloba is specifically for "brain…health" and "memory and mental focus." *Id.*

9. Defendant conveys its uniform, deceptive message to consumers through a variety of media, including its website and online promotional materials, and, most importantly, at the point of purchase, on the front of the Product's packaging/labeling where it cannot be missed by consumers. The front of the Ginkgo Biloba product label states in all capital letters, in a bold white print, "BRAIN & CIRCULATORY HEALTH," in front of a square, maroon background. Further, the label states in all capital letters, similar to the title, "SUPPORTS MEMORY & MENTAL FOCUS." The label also implies from the words "Finest Nutrition" that the supplements are nutritious and good for one's health. Elsewhere on the label, completely bolded and placed next to the Supplement Facts, the Product warrants, "Ginkgo Biloba Extract naturally supports: mental alertness and memory as well as peripheral circulation." The only reason a consumer would purchase the Ginkgo Biloba product is to obtain the advertised cognitive

health benefits and brain and circulatory support, which the Ginkgo Biloba product does not provide.

10. As a result of Defendant's deceptive advertising and false claims regarding the efficacy of its Ginkgo Biloba product, Plaintiff and the proposed class have purchased a product which does not perform as represented and they have been harmed in the amount they paid for the product, which, in the case of Plaintiff Jennifer Hernandez, is approximately $9.00 per 100 count 120 mg tablet bottle.

11. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Defendant's Ginkgo Biloba products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased this Product. Based on violations of state unfair competition laws and Defendant's breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased the Ginkgo Biloba products.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does conduct business in California. Defendant has marketed, promoted, distributed, and sold the Ginkgo Biloba products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C.

§1965(a) because Defendant transacts substantial business in this District.

## PARTIES

15. Plaintiff Jennifer Hernandez resides in San Diego County, California. Plaintiff was exposed to and saw Defendant's representations regarding the cognitive health, brain and circulatory health, and memory and mental focus support of Ginkgo Biloba by reading the Ginkgo Biloba product label in a Walgreens store near her home in San Diego. In reliance on the claims listed on the product label described herein and above, that Ginkgo Biloba, "supports memory and mental focus," and is for "brain and circulatory health," Plaintiff purchased the product. Plaintiff estimates that she most recently purchased the Ginkgo Biloba product at a Walgreens pharmacy at  on or around. She paid approximately $9.00 for the product.

16. Defendant Walgreens Company, ("Walgreens") is a Corporation organized and existing under the laws of the state of Illinois. Walgreens' headquarters and principle place of business is at 200 Wilmot Road, Deerfield, Illinois 60015.

17. Defendant Walgreens manufacturers, advertises, markets and distributes the Ginkgo Biloba product to thousands of customers across the country.

## FACTUAL ALLEGATIONS

*Ginkgo Biloba*

18. For years, Defendant has distributed, marketed and sold the Ginkgo Biloba product on a nation-wide basis. The Ginkgo Biloba product is sold exclusively through Walgreens. The Ginkgo Biloba product is available in a 100-count, 120 mg bottle ("Double Strength") and a 240-count, 60-mg tablet bottle. Plaintiff Jennifer Hernandez purchased  during the class period. The Ginkgo Biloba product prominently advertises its only ingredient as: "Ginkgo Biloba Extract (*Ginkgo biloba*) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 28 mg)."

19. Defendant has consistently advertised that its Ginkgo Biloba product "supports memory and mental focus," that it is used for "brain and circulatory health," and that it "naturally supports: mental alertness and memory as well as peripheral

circulation."



20. As more fully set forth herein, the scientific evidence regarding the use of Ginkgo biloba does not provide **any** of the cognitive health benefits represented by Defendant and Defendant's product does not even contain Gingko Biloba.

21. Since launching the Ginkgo Biloba product, Defendant has consistently conveyed the message to consumers throughout the United States, including California, that the Ginkgo Biloba product provides superior cognitive health benefits, and/or memory benefits, and/or brain health and circulatory support. It does not. Defendant's superior cognitive health claims are false, misleading and deceptive.

22. Even though numerous clinical studies have found that Ginkgo biloba is ineffective, Defendant continues to state on the Product's packaging and labeling that Ginkgo biloba helps to, inter alia: support brain health, support memory and mental focus, and support peripheral circulation.

23. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive cognitive health benefit and brain functioning support claims. Each plaintiff purchased and consumed the Ginkgo Biloba product during the Class period and in doing so, read and considered the cognitive health benefits and brain functioning support representations on the Ginkgo Biloba product label and based their decisions to purchase the Ginkgo Biloba product on the cognitive health benefits and brain functioning support claims. Jennifer Hernandez based her purchase decision in large part on the representations that it would support healthy brain function and support her memory and mental focus. Defendant's cognitive health benefit claims were a material factor, and in fact, the only factor in influencing Plaintiff's decisions to purchase and use Ginkgo Biloba. Plaintiff would not have purchased the Ginkgo Biloba product had she known that the Product does not provide the represented cognitive health benefit claims.

24. Independent scientific studies confirm that the representations made on the Ginkgo Biloba product label, relied upon by Plaintiff in making her purchase, are false and misleading. Despite knowledge of these studies, Defendant continued to make the described representations, misleading Plaintiff and members of the class into believing the Ginkgo Biloba product had actual efficacy and would provide the benefits described in its advertising.

25. Defendant knew or should have known that the Ginkgo biloba extract that it purports to be present in the Ginkgo Biloba product has no actual medicinal value and does not provide any of the warranted benefits as represented by Defendant's Ginkgo Biloba product labels. In fact, there is no scientifically valid, clinical study, published in a reputable peer-reviewed journal demonstrating that any Ginkgo biloba product can "support memory and mental focus" as claimed by the Ginkgo Biloba product label. To the contrary, as numerous such studies have confirmed that Ginkgo biloba does not actually prevent against cognitive decline or assist with cognitive functioning in relatively healthy adults.

26. For example, in 2009 The Journal of the American Medical Association ("JAMA") published the largest study to date entitled *Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial*, 302(24) JAMA 2663-2670 (December 23, 2009). The study included 3069 participants aged 72-96 years, and researchers conducted the study over a span of eight years. Researchers found that 240 mg of Ginkgo biloba extract did not result in less cognitive decline in older adults with normal cognition or with mild cognitive impairment than in the placebo control group.

27. In 2002, JAMA published the Solomon et al. article *Ginkgo for memory enhancement: a randomized controlled trial* (288)(7) JAMA 835-840 (Aug. 21, 2002), in which 203 participants, over the age of 60 and in generally good health, were evaluated for six week periods, with half receiving 120 mg of ginkgo to compare to a control group. The authors concluded that Ginkgo biloba did not improve performance on standard neurophyscological tests that evaluated learning, memory, attention, and concentration. There was similarly no improvement on naming and verbal fluency, and the ginkgo group was no different from the control group on self-reported memory function. "These data suggest that when taken following the manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cognitive function."

28. In 2007 a study entitled *Ginkgo biloba is not a smart drug: an updated systematic review of randomised clinical trials testing the nootropic effects of G. biloba extracts in healthy people,* (22)(5) Hum Psychopharmacology. 265-278 (July 2007) found that, in a review of clinical trials from six databases, there is no convincing evidence for a robust positive effect of Ginkgo biloba ingestion upon any aspect of cognitive function in healthy, young people (age 60 and younger). The study's authors concluded, "[We] have found no convincing evidence from randomized clinical trials for a robust positive effect of G. Biloba ingestion upon any aspect of cognitive function in healthy young people, after either acute or longer term administration." *Id.* at 2007 July; 22[5]:265-278.

29. In a 2012 study published in Human Psychopharmacology: Clinical and

Experimental, researchers searched databases and recent qualitative reviews for randomised controlled trials containing data on memory, executive function, and attention that evaluated over 2500 healthy individuals total. The results in *Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta-analysis* (27)(6) Human Psychopharmacology 527-533 (Nov. 2012) stated that Ginkgo biloba had no ascertainable positive effects on the above-mentioned cognitive functions in healthy individuals.

30. In addition to the lack of positive cognitive benefits, Ginkgo biloba may have negative carcinogenic effects. The National Toxicology Program ("NTP") studied the effects of Ginkgo biloba on rats and mice in small and large doses. In the *NTP Technical Report on the Toxicology and Carcinogenesis Studies of Ginkgo Biloba Extract in F344/N Rats and B6C3F1/N Mice*, NTP TR 578, Publication No. 13-5920, researchers concluded that Ginkgo biloba extract causes cancers of the thyroid gland in male and female rats and male mice and cancers of the liver in male and female mice.

31. As a result of the serious implications of the NTP study, and the lack of scientific evidence supporting safe use and positive effects of Ginkgo biloba, the Center for Science in the Public Interest addressed the director of the Food and Drug Administration ("FDA"), emphasizing that claims regarding Ginkgo biloba's supposed health benefits, including those related to memory and cognitive function, are false and should be stopped and imploring him to issue a directive that Ginkgo is no longer "Generally Recognized As Safe." *See* Exhibit "B."

32. Additionally, studies testing the effect of Ginkgo biloba consumption on dementia and cognitively impaired subjects have a scientifically valid correlation to the claims made on Defendant's product label. The Mayo Clinic defines symptoms of dementia as including following:

- ***Memory loss***
- ***Difficulty communicating***
- ***Difficulty with complex tasks***
- ***Difficulty with planning and organizing***

- ***Difficulty with coordination and motor functions***
- ***Problems with disorientation, such as getting lost***
- ***Inability to reason***

*See* http://www.mayoclinic.org/diseases-conditions/dementia/basics/symptoms/con-20034399 (last viewed February 6, 2015).

33.  Defendant has drawn from these "symptoms" in the advertising of its product. While not directly marketing its product as a treatment for dementia or other cognitive related deficiencies or illnesses, Defendant's representations explicitly and implicitly state that consumption of its Ginkgo Biloba supplement will improve symptoms relating to such conditions, including primarily that consumption of Ginkgo Biloba will improve a consumer's memory," one of the primary symptoms of dementia. The statements "Brain Health" and "mental alertness" are exactly inapposite of an individual suffering from a cognitive condition such as dementia or memory loss. The findings of studies performed specifically on individuals suffering from dementia or other cognitive impairment bear directly on the invalidity of Defendant's misleading marketing messages, as these studies were performed on individuals experiencing the very symptoms that Defendant's product is advertised to improve.

34.  For example, in the 2009 study *Ginkgo biloba for cognitive impairment and dementia*, (1) Cochrane Database Syst. Rev. (Jan. 21, 2009), researchers reviewed 36 trials, nine of which were six months long (2016 participants total). In the more recent and more reliable trials, three out of four found no benefits for cognitive decline. Researchers concluded that while Ginkgo biloba might be safe to ingest, evidence that it has predictable and clinically significant benefit for people with dementia or cognitive impairment is inconsistent and unreliable.

35.  In 2013, the Support Care Cancer published *The use of Ginkgo biloba for the prevention of chemotherapy-related cognitive dysfunction in women receiving adjuvant treatment for breast cancer, N00C9*, (4) Support Care Cancer 1185-1192 (Apr. 2013). Researchers found that in 166 women, 120 mg a day for up to 12 months did not provide

any evidence that Ginkgo biloba can help prevent cognitive changes from chemotherapy.

36. In 2014, the authors of *Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*, 264 Suppl 1, Eur. Arch Psychiatry Clin. Neurosci. 83-90 (Nov. 2014) studied 176 participants who ingested 120 mg daily of Ginkgo biloba over a six-month period. The results indicated that there was no evidence that an average dose of Ginkgo biloba extract created any benefit in mild to moderate dementia.

37. To date, although there are some studies that purport to claim that the ingestion of Ginkgo biloba can provide cognitive health benefits, those studies suffer severe, unmitigated scientific deficiencies, including utilizing a scientifically unreliable sample size, not utilizing scientifically sound testing procedures, and suffering from publication bias, i.e. the funding, publication or sponsorship of the study was provided by a party who stood to benefit from a positive finding.  Or, alternatively, the studies used a larger supplementation of Ginkgo biloba extract than that provided by Defendant's suggested or recommended consumption.  Plaintiff's allegations are based upon scientifically valid studies, published in independent, reputable scientific journals which conclusively demonstrate that the Ginkgo Biloba supplement does not provide the benefits advertised by Defendant, and may even cause harm to consumers.

38. As a result, Plaintiff and the Class members have been damaged by their purchases of the Ginkgo Biloba product and have been deceived into purchasing a Product that they believed, based on Defendant's representations, provided cognitive health benefits and overall brain functioning support when, in fact, it did not.

39. Defendant has reaped enormous profits from its false marketing and sale of the Ginkgo Biloba product.

### Nature's Finest Gingko Biloba Is a Misbranded Dietary Supplement

36. Pursuant to Title 21 of the Code of Federal Regulations, Part 101.4 (21 CFR § 101.4) all dietary supplement products shall list there ingredients "by common or usual name in descending order of predominance by weight on either the principal display panel

or information panel…"

37. The Finest Nutrition Gingko Biloba product violates 21 CFR § 101.4 because it lists Gingko biloba as an ingredient in the product when there is actually no Gingko biloba in the product whatsoever. The Finest Nutrition Gingko Biloba product further violates 21 CFR § 101.4 because it contains undisclosed ingredients such as oryza.

39. California Health and Safety Code, Division 104, Part 5, contains the Sherman, Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Heath & Safety Code §§ 109875-111915). The Sherman Law imposes identical requirements to the federal FDCA.

40. The Sherman Law is explicitly authorized by the FDCA. 21 U.S.C. § 343-1.

41. Plaintiff and the members of the Class would not have purchased the Product if it were known to them that the Product is misbranded pursuant to FDA and California regulations.

## CLASS DEFINITION AND ALLEGATIONS

40. Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant:

> **Multi-State Class Action**
> All consumers who purchased the Ginkgo Biloba product in the state of California and states with similar laws, within the applicable statute of limitations, for personal use until the date notice is disseminated[1].
>
> Excluded from this Class is Defendant and its officers, directors and employees, and those who purchased the Ginkgo Biloba product for the purpose of resale.

41. *Numerosity*. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the

---

[1] Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Texas, Virginia, Washington, West Virginia and Wisconsin, (Collectively, the "Multi-State Class").

proposed Class contains thousands of purchasers of the Ginkgo Biloba product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

42. ***Existence and Predominance of Common Questions of Law and Fact.*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b) whether Defendant's alleged conduct violates public policy;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Defendant engaged in false or misleading advertising;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

43. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendant's deceptive cognitive health benefit claims that accompanied each and every Ginkgo Biloba product Defendant sold. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

44. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

45. **_Superiority_**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46. The Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

47. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

48. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

# COUNT I

## Violation of Business & Professions Code §17200, *et seq.*

49. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

50. Plaintiff brings this claim on behalf of herself and on behalf of the Class. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased the Ginkgo Biloba product in reliance on Defendant's cognitive health benefit claims, including *inter alia*, that the Ginkgo Biloba product:

- Provides "brain and circulatory health";
- "Supports memory and mental function"; and
- [N]aturally supports: mental alertness and memory as well as peripheral circulation";

51. Plaintiff did not receive a product that provided any increased cognitive health benefits at all, but rather received an adulterated product that does not contain any Gingko Biloba.

52. The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the above referenced claims and as alleged throughout herein (which also constitutes advertising within the meaning of §17200) and omissions of material facts related to the numerous scientific studies which demonstrate no cognitive health benefits derived from the consumption of the ingredients present in the Ginkgo Biloba product, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

53. Moreover, Defendant's conduct is further unlawful because it violates 21 CFR § 101.4 and the California Sherman Law Cal. Heath & Safety Code §§ 109875-111915

54. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

55. Defendant's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding the Ginkgo Biloba product, thereby offending an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

56. As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

57. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

58. Business & Professions Code §17200, et seq. also prohibits any "fraudulent business act or practice."

59. Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

60. Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased the Ginkgo Biloba product. Plaintiff and the other Class

members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

61. As a result of its deception, Defendant has been able to reap unjust revenue and profit.

62. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

63. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.*

64. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the Class.

66. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d). The Ginkgo Biloba product is a "good" within the meaning of the Act.

67. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Ginkgo Biloba products:

(5) Representing that [the Product] has . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*   \*   \*

(7) Representing that [the Product] is of a particular standard, quality or grade . . . if [it is] of another.

\* \* \*

(9) Advertising goods . . . with intent not to sell them as advertised.

\* \* \*

(16) Representing that [the Product has] been supplied in accordance with a previous representation when [it has] not.

68. Defendant violated the Act by representing and failing to disclose material facts on the Ginkgo Biloba labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

69. Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and for attorney's fees and costs as allowed by statute. Plaintiff is not seeking damages for her CLRA cause of action at this time.

### COUNT III
### Violations of the False Advertising Law –
### Cal. Bus. & Prof. Code § 17500 *et seq.*

70. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as set forth in full herein.

71. In violation of California Business and Professional Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Finest Nutrition Gingko Biloba product.

72. Defendant knew and reasonably should have known that the labels on Defendant's Products were untrue and/or misleading.

73. Defendant profited from its sales of the falsely and deceptively advertised Product to unwary consumers.

74. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. For her UCL and FAL claims, awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

C. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

D. Ordering Defendant to engage in a corrective advertising campaign;

E. Awarding attorneys' fees and costs as allowed by statute;

F. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated:  February 6, 2015

**CARPENTER LAW GROUP**

By: */s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone:   619.756.6994
Facsimile:    619.756.6991
todd@carpenterlawyers.com

**LAW OFFICES OF RONALD A. MARRON, APLC**

By:/s/ *Ronald A. Marron*
RONALD A. MARRON
*ron@consumersadvocates.com*
SKYE RESENDES
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

*Attorneys for Plaintiff and the   Proposed Class*